Phyllis M. LEWIS, Plaintiff,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY et al., Defendants.

Civ. A. No. 76–3010.

United States District Court, E. D. Pennsylvania.

Sept. 16, 1977.

---

43. 15 U.S.C.A. § 766(i)(1)(C).

44. It is therefore unnecessary to treat the claim of the FEA that Shell should make restitution.

Neil Mittleman, Philadelphia, Pa., for plaintiff.

Jonathan A. Kane, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

Plaintiff, a black woman discharged by Southeastern Pennsylvania Transportation Authority (SEPTA), instituted this action against her former employer and certain of its supervisory and management personnel[1] charging that rights guaranteed her by the United States Constitution, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[2] were violated. In particular, she contends that she was discharged in retaliation for having previously filed a complaint with the Pennsylvania Human Relations Commission and because she openly opposed defendants' discriminatory practices. Presently before the court is defendants' motion to dismiss which, for the reasons hereafter stated, must be granted in part as to the Section 1983 claim and denied as to the Title VII action.

1. The Factual Background

Taking as true the allegations of the complaint, as I must do in a motion to dismiss, *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964), and all reasonable inferences therefrom, *Curtis v. Everette*, 489 F.2d 516, 518 (3d Cir. 1973), cert. denied 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), the pertinent facts may be stated as follows. In September, 1970, plaintiff applied for a position as a bus or trolley operator with SEPTA. When she was refused employment, she filed a complaint with the Pennsylvania Human Relations Commission (hereafter PHRC) charging that she had been rejected because of her race and sex. The PHRC investigated and determined that SEPTA had not had a female trolley or bus driver since World War II and had never hired a black female for such a position. In a conciliation settlement, SEPTA agreed to employ plaintiff and pay her $2600. in back wages. On January 31, 1972, she became a trainee and was assigned to the Luzerne depot to operate trolleys. Thereafter, she was transferred to the Germantown depot in December, 1972, to operate buses.

According to plaintiff, the individual defendants began to harass and frustrate her almost immediately by changing her shift without cause, refusing to provide her with proper medical treatment for work-related injuries, assigning her to unsafe and substandard buses and trolleys, and altering her days off without adequate notice. In January, 1973, plaintiff was placed on a five-day suspension. During this suspension, she filed charges with the Pennsylvania State Occupational Safety and Health Office, complaining that SEPTA's buses and trolleys were unsafe and did not meet the basic standards of pollution control. Thereafter, on January 29, 1975, two wheels fell off the bus she was operating on her

---

1. The individual defendants are Henry Aikens, the General Superintendent of Transportation of SEPTA; Arthur Kenner, the Superintendent of SEPTA's Germantown depot; and Richard Eastburn, the Luzerne depot superintendent.

2. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(3) and (4), and the First and Fourteenth Amendments. Plaintiff seeks reinstatement to full employee status with seniority rights and recovery of back pay and fringe benefits in the amount of $50,000. plus punitive damages of $100,000.

assigned route. Ten days later, plaintiff gave an interview, aired that evening over a local Philadelphia television station, in which she stated that she believed that SEPTA's equipment was unsafe, its employment practices were discriminatory, and its management was conspiring against her. The next day, February 9, 1973, plaintiff was discharged by Depot Superintendent Kenner, by direction of SEPTA's General Superintendent of Transportation Aikens, due to her "unsatisfactory overall performance" (Complaint, paragraph 17).[3] Plaintiff then filed a complaint against SEPTA and Local 234 of the Transport Workers Union with the Equal Employment Opportunity Commission (hereafter EEOC). The EEOC determined that there was reasonable cause to believe that the "dismissal action at least in part, was based on retaliation against charging party because she had filed a complaint of discrimination with the PHRC and because she ardently and vociferously opposed practices forbidden by the Act." EEOC Determination, at p. 3. Conciliation, though attempt-

ed, was unsuccessful and plaintiff commenced this action within 90 days following receipt of the Notice of Right to Sue Letter.

The first count of the complaint asserts a claim against all defendants under the retaliation provision of Title VII, 42 U.S.C. § 2000e–3(a). In the second count, plaintiff alleges that defendants deprived her of her Fourteenth Amendment right to substantive due process and her First Amendment right of free speech. Because both sides have placed the majority of emphasis on plaintiff's second cause of action, I shall consider that claim first.

### 2. Plaintiff's Claims under 42 U.S.C. § 1983 (Count II)

 Although defendants have advanced four grounds for dismissal of this count, only one argument warrants extensive comment:[4] the contention that this action must be dismissed on the merits because the complaint has failed to state a cause of action under either of the two general theories recognizing the right of

---

**3.** Although it is not apparent on the face of the complaint, plaintiff was not free from deficiencies in her performance. The EEOC determination reveals that plaintiff compiled a number of small safety violations (wearing a non-regulation hat, smoking a cigarette in a prohibited area, running her bus over a curb) as well as some more serious infractions. But the report also pointed out that these serious infractions were due to misunderstandings rather than deliberate violations and that other drivers had worse performance records and had not been discharged. See Complaint, Exhibit "A".

**4.** Defendants other arguments require little discussion. First, SEPTA has urged that it is not a "person" within the meaning of Section 1983, and there is no doubt that it is correct in that contention. The authority is an instrumentality or agency of the Commonwealth, see the Metropolitan Transportation Authorities Act, 66 P.S. §§ 2001 et seq., 2004(a), and, as such, is not amenable to suit under this section. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355, 1357 (3d Cir. 1976); *Gittlemacker v. County of Philadelphia*, 413 F.2d 84, 86 (3d Cir. 1969), cert. denied 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); *Nelson v. Southeastern Pennsylvania Transportation Authority*, 420 F.Supp. 1374, 1379 (E.D.Pa.1976).

Second, no cause of action under the Fourteenth Amendment will be implied against SEPTA through 28 U.S.C. § 1331. *Crosley v. Davis*, 426 F.Supp. 389 (E.D.Pa.1977); *Anderson v. Erwin*, Civil Action No. 76–2020 (E.D. Pa., December 20, 1976); *Pitrone v. Mercadante*, 420 F.Supp. 1384, 1391 (E.D.Pa.1976). For these reasons, SEPTA's motion to dismiss Count II must be granted.

Since SEPTA is no longer a party to this second cause of action, the final argument that this action is barred by the applicable statute of limitations need be decided only as to the individual defendants. They argue that Pennsylvania's two-year statute of limitations dealing with tort actions involving personal injuries, 12 P.S. § 34, should apply. I disagree. Plaintiff's claim of injury is not one involving "physical conduct of an irregular or sudden nature." *Dudley v. Textron, Inc.*, 386 F.Supp. 602, 606 (E.D.Pa.1975). Rather, plaintiff complains of discrimination and the denial of equal treatment by the defendant in the enjoyment of her contractual employment rights. The applicable statute of limitations is six years and since her claims arose when she was discharged in 1973, plaintiff's Section 1983 action against these defendants is not time-barred. See *Wilson v. Sharon Steel Corp.*, 549 F.2d 276, 280 (3d Cir. 1977); *Dupree v. Hertz Corp.*, 419 F.Supp. 764, 766–67 (E.D.Pa.1976); *Beamon v. W. B. Saunders Co.*, 413 F.Supp. 1167, 1175 (E.D.Pa.1976).

substantive due process. I find, however, that plaintiff has set out a claim for a violation of her substantive due process rights and that dismissal of the complaint on this ground would be improper.[5]

Defendants' argument is premised upon the balancing test first adopted in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and utilized in cases such as this where a public employee has been discharged for making public statements critical of his employer. In *Pickering*, a high school teacher, who had written a letter to a local newspaper criticizing the school board and the superintendent for their handling of bond issues, was dismissed by the school board for conduct detrimental to the efficient operation and administration of the schools. The Supreme Court held that the board's action had violated Pickering's right of free speech and concluded that public employment did not necessitate the relinquishment of First Amendment rights. Rather, the Court felt that a balance should be struck, weighing the employee's interests as a citizen in speaking out on matters of public importance against the detrimental effects the communication would have on the efficient operation of the public employer's business. The Court declined to issue a hard and fast rule delineating those situations where the employee's speech would be protected simply because of the infinite variety of fact situations that could arise, *Pickering*, supra, 391 U.S. at 569, 88 S.Ct. at 1735, but it is clear that the "crucial variant in this balance appears to have been the hierarchial proximity of the criticizing employee to the person or body criticized," *Sprague v. Fitzpatrick*, 546 F.2d 560, 564 (3d Cir. 1976), cert. denied 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977), in light of the Court's observations that "significantly different considerations would be involved" in those cases where

. . . "the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of

public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them . . ." *Pickering*, supra, 391 U.S. at 570 n. 3, 88 S.Ct. at 1735.

The Third Circuit first applied this test in *Roseman v. Indiana University*, 520 F.2d 1364 (3d Cir. 1975), cert. denied 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976), and affirmed the dismissal of an associate university professor who had criticized the acting chairman of her department's teaching staff. The Court of Appeals decided that Roseman's statements were not protected for two reasons: first, because they did not rise to the same level of public importance that was present in *Pickering* and second, the element of disruptive impact contained in Roseman's statements. In so holding, the court declared:

. . . Pickering's attacks were on a remote superintendent and school board; in contrast, Roseman's called into question the integrity of the person immediately in charge of running a department which, it is fair to assume, was more intimate than a school district. The district court found that "plaintiff's attacks upon Faust's integrity in a faculty meeting would undoubtedly have the effect of interfering with harmonious relationships with plaintiff's superiors and co-workers." [*Roseman v. Hassler*, D. C.], 382 F.Supp. [1328], at 1339. In making this finding, the district court reflected a similar concern expressed by the Supreme Court, which noted that Pickering's statements were "in no way directed towards any person with whom [Pickering] would normally be in contact in the course of his daily work as a teacher." *Pickering*, supra, 391 U.S. at 569–70, 88 S.Ct. at 1735. Because of this, Pickering's case raised "no question of maintaining either discipline by immediate superiors or harmony among co-workers." *Id.* at 570, 88 S.Ct. at 1735. The same obviously cannot be said of Roseman's faculty meeting accu-

---

**5.** The discussion which follows applies only to the individual defendants since SEPTA is not amenable to suit under this count. See note 4, supra.

sations directed at the Acting Chairman of her Department [footnote omitted]. *Id.* at 1368–69.

The Court found a similar example of a disruptive situation in *Sprague v. Fitzpatrick*, supra, 546 F.2d at 560, affirming my earlier decision, see 412 F.Supp. 910 (E.D. Pa.1976), by holding that newspaper interviews given by the first assistant district attorney of Philadelphia impugning the integrity of the district attorney created an irreparable breach of confidence between the two men and "totally precluded any future working relationship." *Sprague,* supra, 546 F.2d at 565. The court was aware that Sprague's criticisms were of grave public import but declined to tilt the *Pickering* balance in favor of First Amendment protection where the statements had so severely undermined the employer-employee relationship. The public importance of an employee's statements do not create automatic First Amendment protection; it is only one of the factors to be weighed in the speaker's favor. The key question under *Pickering* is the effect on the employment relationship. *Id.* at 565–66.

■ With the preceding as background, I find that the instant case falls closer to the situation in *Pickering* and conclude that plaintiff's speech was entitled to First Amendment protection. Defendants contend that plaintiff's accusations reached the same level as the statements in *Roseman* and *Sprague* because they were certain to disrupt the functioning of plaintiff's department and foreclosed any possible effec-

tive working relationship with her superiors. But it is clear the plaintiff's comments were not directed toward her immediate superiors; they were aimed at the management of SEPTA whom she charged with conspiracy and discriminatory employment practices. Bus drivers do not work in close association with SEPTA's management. Therefore, the criticisms would not affect anyone with whom plaintiff would have daily contact and would not upset or interfere with harmonious relationships with her co-workers. As in *Pickering,* the comments raised no question of maintaining departmental discipline by her immediate supervisors. For these reasons, I find that plaintiff's remarks did not foreclose any possible working relationship with her immediate supervisors, these statements should be protected under the First Amendment,[6] and thus, defendants have not shown any reason to dismiss the complaint.[7]

### 3. The Title VII Action (Count I)

#### a. Deficiencies in EEOC Complaint do not Warrant Dismissal

The individual defendants argue that the Title VII action must be dismissed as to them because they were not named in the charge plaintiff filed with the EEOC. This is evidenced from the EEOC determination and the Notice of Right to Sue letter, neither of which makes any mention of the individuals. Plaintiff seeks to overcome this deficiency by reference to the familiar principles of law that procedural technicalities should not ban potentially just claims,

---

**6.** I also find that the public interest in the alleged safety defects and discriminatory employment practices is a factor to be weighed in plaintiff's favor. Defendant attempts to refute the import of the charges by contending that: 1) a safe operation at SEPTA was adequately protected by the Pennsylvania State Occupational Safety and Health Office (PSOSHO); and 2) discrimination was vigorously watched at that time by the Pennsylvania Human Relations Commission (PHRC). These contentions are without merit. That PHRC cannot prevent every instance of employment discrimination is obvious from the growing number of Title VII actions filed and upheld. The same is true of the PSOSHO argument; shortly after plaintiff's charge was filed with that state agency, two

wheels fell off the bus she was operating. Simply because these agencies are "vigorously protecting" the interests of the public should not preclude a member of the public from speaking out about those same interests.

**7.** Because I have concluded that plaintiff may maintain her cause of action under Section 1983 on the alleged violation of substantive due process, I need not consider the second so-called "theory" advanced by defendants, i. e., that there is no "property" or "liberty" interest in employment protected by the Fourteenth Amendment so that any impairment of that interest would constitute a specific constitutional violation.

liberality in construction should be favored, and by contending that the individuals were so directly involved in the alleged discriminatory acts that they must have had notice of and been a part of the EEOC investigation.

■ Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), provides that a plaintiff may institute a civil action against only those employers named as respondents in the charge filed with the EEOC. This prerequisite is important for two reasons:

. . . First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969).

Plaintiff argues that the individual defendants should fall within a judicially created exception to this section because they were an integral part of SEPTA's operation and it was through them that the alleged discriminatory policies and practices were carried out, so that any investigation of the named defendants would have included them as a matter of course. It is clear, however, that civil suit cannot be maintained against individuals unnamed before the EEOC just because they were employed where plaintiff worked—it is only if those newly-named defendants have a substantial identity of interest with the EEOC respondent and knew or should have known of the EEOC proceedings that they be subjected to a Title VII action. *Flesch v. Eastern Pa. Psychiatric Institute*, 434 F.Supp. 963 at 970–971 (E.D.Pa., 1977); *Scott v. University of Delaware*, 385 F.Supp. 937, 941 (D.Del. 1974); *McDonald v. American Fed. of Musicians of U. S. and Canada*, 308 F.Supp. 664, 669 (N.D.Ill.1970).

■ Recently, the Third Circuit addressed this question and held that if a plaintiff claims a Section 706(f)(1) exception is applicable, the district court should not rule on a motion to dismiss until plaintiff has had an opportunity to conduct discovery and develop a sufficiently broad record pertinent to the possible application of the exception. *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 865 (3d Cir. 1977). In this case, the EEOC charge has not been introduced and there is little else on the record to establish whether the scope of the Commission's investigation would have put defendants Eastburn and Aikens on notice of this suit. Heeding the Third Circuit's directive, I shall deny the motions of Eastburn and Aikens to dismiss on this ground, without prejudice to their right to file an appropriate motion after an adequate record has been made.

■ I can, however, conclude that the record as it presently exists is sufficient to deny defendant Kenner's motion to dismiss. This determination is based on the EEOC report and, in particular, the following statement it contained:

The Commission notes that the subjective nature of administering discipline, (Respondent's lack of a written discipline policy) allows each depot superintendent to determine such actions and the practice may operate as a vehicle for discrimination against persons protected under Title VII.

It must be kept in mind that the EEOC investigation was focused primarily on the plaintiff's discharge. Without the benefit of having plaintiff's EEOC charge before me, I can only construe the above extract to indicate that the particular aspects of her dismissal were investigated. In light of this statement, it is entirely possible that Kenner was aware or should have been aware of the EEOC inquiry. Defendant Kenner's motion to dismiss on this ground must, therefore, be denied.[8]

b. *Claim of Retaliation is Adequately Stated by Count I*

Defendants' final assertion is that plaintiff may not maintain the Title VII action

---

**8.** This denial will not preclude my entertaining another motion to dismiss should it later be determined, following a fuller development of the record, that Mr. Kenner did not know nor should he have known of this investigation.

because she has failed to state a claim of retaliation as defined in 42 U.S.C. § 2000e–5. It is evident, however, that defendants have misinterpreted the true thrust of plaintiff's claim.

 Plaintiff's jurisdictional basis for maintaining her claim of retaliation is 42 U.S.C. § 2000e–3(a) and not Section 2000e–5. The former section provides:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because *he has opposed any practice made an unlawful employment practice* by this subchapter *or* because he has *made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing* under this subchapter [emphasis supplied].

On the other hand, Section 2000e–5 is premised on the filing of a charge with the EEOC and subsequent retaliation for the filing of that charge. Here it is clear that plaintiff may maintain her cause of action under § 2000e–3(a) since she has alleged sufficiently her continued opposition to the supposed unlawful employment practices for sometime prior to the discharge.[9] Therefore, defendants' motion to dismiss Count I on the merits must be denied.

### 4. Conclusion

The Section 1983 action against SEPTA must be dismissed because it is not a "person" for the purposes of that section and a direct Fourteenth Amendment claim may not be implied against it. But plaintiff can pursue this action against the individual defendants because she has alleged a violation of her First Amendment right of freedom of speech and the action was commenced well before the expiration of the

applicable six-year statute of limitations. With regard to the Title VII action, any decision on the motions of defendants Aiken and Eastburn to dismiss that action on the ground that they were not named in the EEOC complaint would be premature, since there is an inadequate record to support a determination as to their role in the EEOC investigation. On the other hand, the record is sufficient to hold that defendant Kenner was part of the EEOC inquiry. Plaintiff has also made out a claim of retaliation, and she may pursue her causes of action under 42 U.S.C. § 2000e–3(a).

---

**9.** Moreover, plaintiff argues that her charge was filed with the EEOC prior to her discharge and that this would suffice to bring an action under Section 2000e–5. She relies on certain statements in her memorandum wherein she avers that her EEOC complaint was actually submitted on January 16, 1973, on a charge of race and sex discrimination, amended on January 30, 1973, to include a charge of retaliation and further amended on February 13, 1973, to reflect the discharge. While assertions in a

supporting brief are not sufficient to defeat a motion to dismiss and plaintiff otherwise would be required to amend her complaint, see *Hunt v. A Cargo of Petroleum Products Laden on Steam Tanker Hilda*, 378 F.Supp. 701, 705 (E.D. Pa.1974), aff'd 515 F.2d 506 (3d Cir.), cert. denied 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975), such a step is not necessary here in light of plaintiff's maintenance of a cause of action under Section 2000e–3(a).