168 N.J. Super. 220 (1979)
402 A.2d 947
THOMAS TRANTINO, APPELLANT,
v.
DEPARTMENT OF CORRECTIONS, RESPONDENT.
RALPH DAVIS, APPELLANT
v.
DEPARTMENT OF CORRECTIONS, RESPONDENT.
JOHN WASHINGTON, APPELLANT,
v.
DEPARTMENT OF CORRECTIONS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1979.
Decided May 15, 1979.
*222 Before Judges LORA, MICHELS and LARNER.
Mr. Joseph M. Finnin argued the cause for appellant Thomas Trantino (Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys).
Ms. Leigh Bienen, Assistant Deputy Public Defender, argued the cause for appellants Ralph Davis and John Washington (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Ezra D. Rosenberg, Assistant Deputy Public Defender, of counsel, and Ms. Bienen on the brief).
Ms. Janice S. Mironov, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Assistant Attorney General, of counsel, and Ms. Mironov on the brief).
*223 The opinion of the court was delivered by MICHELS, J.A.D.
Appellants Thomas Trantino, Ralph Davis and John Washington, State Prison inmates whose death sentences were commuted to life imprisonment under our Supreme Court's order in State v. Funicello, 60 N.J. 60 (1972), cert. den. sub nom. New Jersey v. Presha, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972), appeal from final decisions of respondent New Jersey Department of Corrections refusing to grant them work credits toward parole eligibility for the time spent on death row.[1] Following commutation of appellants' death sentences to sentences of life imprisonment, appellants' eligibility for parole became governed by N.J.S.A. 30:4-123.11, which provides:
Any prisoner serving a sentence of life shall be eligible for consideration for release on parole after having served twenty-five years of his sentence, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments.
Appellants claim that, even though they were not engaged in "productive occupations" while confined on death row, the Funicello case mandates the granting of such work credits. They ground their claim upon the following language of the Supreme Court's opinion in Funicello:
The death penalty * * * is set aside pursuant to the mandate of the United States Supreme Court and the defendant is hereby sentenced to life imprisonment, nunc pro tunc, as of the date the *224 death sentence was initially imposed, the defendant to be entitled to the same credits as if initially sentenced to life imprisonment. * * * 60 N.J. at 67-68 [Emphasis supplied]
We have no hesitancy in concluding that appellants are not entitled to work credits for work they did not perform. We are thoroughly satisfied that the Supreme Court directive in Funicello cannot be interpreted as requiring us to reach a different result.

I
The granting of work credits is expressly controlled by N.J.S.A. 30:4-92 which, in pertinent part, provides:
The inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the State Board shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensation therefor as the State Board shall determine.
Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both. Such remission from the time of sentence shall not exceed 1 day for each 5 days of productive occupation, but remission granted under this section shall in no way affect deductions for good behavior or provided by law. [Emphasis supplied.]
It is evident that our Legislature intended the granting of work credits toward reduction of a sentence to be predicated upon a prisoner's actual performance of work. This principle applies even though a prisoner's failure to engage in work may be due to circumstances beyond his control, such as physical infirmity or illness, administrative segregation or unavailability of work. Thus, in Zink v. Lear, 28 N.J. Super. 515 (App. Div. 1953), we upheld the State Parole Board's refusal to grant a prisoner work credits for the time he was unable to work despite the nature of the factors comprising that inability, viz., the prisoner's illness, the illness or vacation status of supervisory personnel, and the observation of national holidays at the prison. In rejecting *225 the prisoner's argument that N.J.S.A. 30:4-92 operated inequitably and discriminated against him in favor of physically able prisoners, we confirmed the legislative policy of "no work, no work credits," stating:
The simple answer to this is that there is no authority under R.S. 30:4-92, N.J.S.A. for granting work time allowance to men who do not work, whether because of illness, unavailable work, vacations or otherwise  and this is conceded. The Legislature has not provided for granting work time credits to prisoners who are not actually engaged in productive occupations. The prison authorities can reduce a sentence only in the manner prescribed by statute. [at 520]
In our view, the Supreme Court did not intend to alter, even by implication, the clearly defined legislative policy that the allowance of work credit is based upon actual work performed. The reasonable interpretation of the Funicello directive is simply that all prisoners whose death sentences were commuted to life imprisonment are entitled to the same credits authorized by statute and which would have been earned had they been sentenced initially to life imprisonment. Based on the records under review, it appears that appellants have been given all credits to which they are entitled. They have been given credit for the time served in custody between arrest and the imposition of sentence in accordance with R. 3:21-8, and have been allowed commutation time for good behavior in accordance with N.J.S.A. 30:4-123.11.
Urbano v. McCorkle, 334 F. Supp. 161 (D.N.J. 1971), supplemented on other grounds 346 F. Supp. 51 (D.N.J. 1971), aff'd mem. 481 F.2d 1400 (3 Cir.1973), relied on by appellants, is plainly distinguishable and does not support appellants' claim for work credits. Urbano involved a civil rights action for damages under 42 U.S.C.A. § 1983, grounded on a claim by a prisoner that the New Jersey Department of Institutions and Agencies maliciously and unlawfully placed him in punitive segregation. As part of the relief sought, the prisoner contended that he was entitled *226 to work credits lost as a result of such punitive segregation. The District Court held that loss of work credits was a proper element of damage "if Urbano [could] show that he otherwise would have earned work credits that were actually denied him in segregation." 334 F. Supp. at 169.
Here, in contrast to the Urbano case, we are not dealing with a civil rights damage action. Appellants were not imprisoned on death row by virtue of any unlawful action of the Department of Corrections or the prison authorities. Appellants were imprisoned under then valid legal sentences of death imposed following convictions for first degree murder. See State v. Laws, 51 N.J. 494, 514-515 (1968), cert. den. 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968) (appellant Washington); State v. Davis, 50 N.J. 16 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968), and State v. Trantino, 44 N.J. 358 (1965), cert. den. 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966). While the Funicello court thereafter declared the death penalty to have been unconstitutionally imposed in these cases, and commuted all death sentences to life imprisonment, it did not declare as unconstitutional the remainder of the statutes there under discussion (N.J.S.A. 2A:113-3 and 113-4), or void or set aside the convictions previously obtained thereunder. Thus, appellants' first degree murder convictions under the statute remained valid and their imprisonment lawful.

II
The policy of the Department of Corrections which denies prisoners, whose death sentences were commuted to life imprisonment, work credits toward parole eligibility for the time spent on death row does not violate the constitutional guarantees of equal protection or due process. There is no merit in the claim that this work credit policy "created an arbitrary distinction which is not founded upon a substantial state interest between prisoners who were sentenced *227 to life imprisonment on a particular day and prisoners whose death sentences were commuted to life imprisonment as of that same day."
Constitutional principles of equal protection do not require that all persons be treated identically. They require only that any differences in treatment be justified by an appropriate state interest. The State need only show a rational basis for its classification where, as here, the classification is not suspect. As the United States Supreme Court recently stated in Parham v. Hughes, ___ U.S. ___, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979):
State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause. Lockport v. Citizens for Community Action, 430 U.S. 259, 272, 97 S.Ct. 1047, 51 L.Ed.2d 313. Legislatures have wide discretion in passing laws that have the inevitable effect of treating some people differently from others and legislative classifications are valid unless they bear no rational relationship to a permissible state objective. New York City Transit Authority v. Beazer, ___ U.S. ___, 99 S.Ct. 1355, 59 L.Ed.2d 58; Vance v. Bradley, ___ U.S. ___, 99 S.Ct. 939, 59 L.Ed.2d 171; Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520; Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed. 2d 491.
Not all legislation, however, is entitled to the same presumption of validity. The presumption is not present when a State has enacted legislation whose purpose or effect is to create classes based upon racial criteria, since racial classifications, in a constitutional sense, are inherently "suspect." McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222; Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. And the presumption of statutory validity may also be undermined when a State has enacted legislation creating classes based upon certain other immutable human attributes. See, e.g., Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (national origin); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (alienage); Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (illegitimacy); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (gender).
In the absence of invidious discrimination, however, a court is not free under the aegis of the Equal Protection Clause to substitute its judgment for the will of the people of a State as expressed in the laws passed by their popularly elected legislatures. [___ U.S. at ___, 99 S.Ct. at 1745-1746]
*228 See also, San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 15, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); State v. Fearick, 69 N.J. 32, 40 (1976).
Clearly, a rational basis existed for distinguishing between prisoners who were sentenced to death and those who were sentenced to a term of years or even life imprisonment. The severity of the sentence meted out to the former group manifested an obvious response to the particularly heinous nature of the offenses precipitating its imposition. Moreover, the finality of the punishment, foreclosing, as it did, any notion of rehabilitation, justified the need to accord different treatment to prisoners confined under such a sentence. Thus, those prisoners confined under death sentences prior to 1972 were segregated from the general prison population. They did not engage in "productive occupations" and thus were not entitled to work credits. The determination of the Department of Corrections to deny work credits to such prisoners for the time spent on death row was in accordance with and furthered the objectives of the legislative policy that the allowance of work credits is based upon actual performance of work.
Moreover, as of the day appellants' death sentences were commuted to life imprisonment, they were, in fact, treated identically regarding eligibility for work credits to a prisoner who, on the same day, received a life sentence.
From the foregoing, it may be seen that appellants' equal protection argument suffers from a critical flaw: What they would have this court do is hold, in effect, that they should have been similarly treated to those prisoners who received life sentences, or sentences for a term of years, at the same time they received sentences of death. Any such holding, however, would ignore the previously discussed rationale for having treated these two groups as different classes. Hence, appellants do not even meet the threshold requirement for triggering equal protection analysis, namely, demonstrating disparate treatment among members of the same class.

*229 III
Finally, the Department of Corrections' action in changing Trantino's best estimated parole eligibility date (BEPED) from September 1977 to December 1979 does not offend the constitutional prohibitions against the imposition of ex post facto laws. U.S. Const., Art. I, § 10, cl. 1; N.J. Const. (1947), Art. IV, § VII, par. 3. The Department of Corrections changed BEPED from September 1977 as a result of its policy of refusing to grant work credits toward parole eligibility for the time prisoners spent on death row when they were not actually engaged in "productive occupations." Trantino had no vested right in the September 1977 BEPED and the fact that it was subsequently changed does not present an issue of constitutional magnitude requiring our interference. As Judge Goldmann so aptly observed in Zink v. Lear, supra,
Parole presents a question of statutory construction; no constitutional right is involved. * * * Parole is a matter of legislative grace and not a thing of right. * * * Parole may be granted or withheld, as the legislative discretion may impel. When sentence is imposed upon a defendant, there is no constitutional guaranty that the provisions regarding parole will remain constant; the only constitutional inhibition is that no law may be passed increasing the punishment for the crime committed. * * * The changes effected by the 1948 Parole Act and its amendments imposed no new penalty nor did they increase the sentence for the crime. The act simply changed the procedure of administering parole and bears none of the elements requiring condemnation as abrogating the prisoner's constitutional rights. [28 N.J. Super. at 524-525; citations omitted]
See also, Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); DiMiceli v. State Parole Board, 29 N.J. Super. 80 (App. Div. 1953), aff'd o.b. 15 N.J. 446 (1954).
Accordingly, the decisions of the Department of Corrections refusing to grant work credits to appellants Trantino and Washington for the time spent on death row are affirmed. The appeal filed by appellant Davis, having been rendered moot by the grant of parole, is dismissed.
NOTES
[1] Appellant Ralph Davis was released on parole while the instant appeal was pending, thereby, as conceded by all counsel, rendering moot his interest herein. Additionally, appellant John Washington's death sentence had actually been modified by the Supreme Court to life imprisonment approximately 3 1/2 years prior to issuance of the directive in Funicello. State v. Laws, 51 N.J. 494, 514-515 (1968), cert. den. 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968). Washington, nevertheless, argues that, pursuant to the decision in Funicello, he is entitled to work credits for the time spent on death row prior to modification of his sentence.