568 F.Supp. 946 (1983)
Ralph INGENITO, Plaintiff,
v.
DEPARTMENT OF CORRECTIONS, STATE OF NEW JERSEY, John Degnan, Former Attorney General of New Jersey, Barbara A. Harned, Deputy Attorney General of New Jersey, William Fauver, Commissioner of the Department of Corrections, Michael Wiechnik, Chief of the Bureau of Classification, Defendants.
Civ. A. No. 82-2490.
United States District Court, D. New Jersey.
July 19, 1983.
*947 Christopher H. Riley, Jr., Millville, N.J., for plaintiff.
*948 Edward J. Boccher, Deputy Atty. Gen., Trenton, N.J., for defendants.

OPINION
GERRY, District Judge.
Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his rights to due process and equal protection of the law[1] with regard to the defendants' interpretation and application of N.J.S.A. 30:4-92 (West 1981). That statute provides:
The inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the State Board[2] shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensation therefor as the State Board shall determine.

Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both.
(Emphasis added.)
He is seeking damages against the Department of Corrections, State of New Jersey; John Degnan, former Attorney General of New Jersey; Barbara A. Harned, Deputy Attorney General of New Jersey; William Fauver, Director of the State Division of Corrections and Parole; and Michael Wiechnik, Chief of the Bureau of Classification (and former Correctional Analyst).

I. Background

Plaintiff is a former inmate of the New Jersey prisons who was confined for various periods of time beginning in 1941. Most recently he was sentenced to an aggregate term of 9-19 years in 1976 and was released on parole in December, 1980.[3]
His earlier convictions and sentences, which followed upon pleas of guilty entered without the advice of counsel or an appropriate waiver thereof, were vacated pursuant to the Supreme Court's ruling in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and related cases.
While serving time for those convictions, plaintiff was allegedly employed for 4,425 days. See Affidavit of Ralph Ingenito. Upon being imprisoned in 1976, plaintiff, relying upon N.J.S.A. 30:4-92, sought credit against his sentence for the work credits he allegedly earned while serving his vacated sentences. The State denied him that credit.
Specifically, in a letter dated March 31, 1979, to defendant William Fauver, Commissioner of the Department of Corrections, plaintiff requested that the work credits which he had previously earned be applied to his current sentence just as the State allegedly had done in the cases of Lousi Quatro and Michael Capano, two other inmates. Plaintiff was informed that his request was the subject of an outstanding request for advice from the Attorney General. See Complaint and Affidavit of Defendant Michael Wiechnik.
Thereafter, the Department of Corrections was advised by Deputy Attorney General Barbara Harned[4] that inmates may properly be awarded credits for work performed during a previous sentence which has been overturned only under specific circumstances:
(1) Where an inmate is reconvicted of an offense of which the previous sentence was overturned, he would be entitled to credits earned on the earlier sentence before it was overturned;

*949 (2) When an inmate is incarcerated on consecutive sentences and the first sentence is invalidated, he is entitled to credits earned on the first sentence as of the date the consecutive sentence was imposed; and
(3) Where a parolee is arrested for a second, unrelated crime and returned to prison as a parole violator, he is entitled to credits earned on his original sentence after he returned to prison as a parole violator if it is then overturned.
There are two principles which guided Ms. Harned in reaching her decision. First of all, she noted that work credits are awarded to aid prison officials in "the maintenance of discipline," and thus a grant of such credits requires "observation and evaluation of a prisoner's conduct." Accordingly, "credit for work performed while serving a sentence should ordinarily be granted against that particular sentence ... to assure that work credits are used to maintain discipline" and to "ensure the proper observation and evaluation of a prisoner's work performance."
She also relied upon a principle that "due process does not mandate that time spent in custody must be credited against a sentence resulting from another conviction for an unrelated offense," since to do so could create a situation "wherein a person might have several years of prison time to apply to a sentence for a crime that he has not yet committed or for which he has not yet been prosecuted." She relied upon State v. Marnin, 108 N.J.Super. 442, 445, 261 A.2d 682 (App.Div.1970), cert. denied, 55 N.J. 598, 264 A.2d 70 (1970); accord, Bauers v. Yeager, 261 F.Supp. 420 (D.N.J.1966). In other words, the State is concerned about unincarcerated persons having a "bankroll" of credits which they know can be used to minimize any future incarceration.
Plaintiff's request for work credits was denied, because the facts surrounding his history of incarceration did not fit into any one of the three categories outlined by the Deputy Attorney General. It was and is also defendants' position that plaintiff did receive some credit against his earlier sentence for work performed during those incarcerations. Although work records from his 1941 and 1944 sentences are unavailable, plaintiff allegedly received 299 days of credit for work performed during his 1947 sentence and at least 11 days of credit against his 1944 sentences. See Affidavit of Michael Wiechnik. Plaintiff was and is claiming he earned 885 days of work time credits for 4,425 days of work performed.
Subsequent to learning of defendant Harned's memorandum opinion, plaintiff again sought to obtain his work credits. He was informed by the Senior Classification Officer at his institution, Kathy Carney, that he did not fall within the categories enumerated in the memorandum opinion, and that the Capano and Quatro cases upon which plaintiff was relying to support his claim were individual cases decided on their own merits and distinguishable from his own.
Plaintiff was also informed by Kathy Carney that the Department of Correction was not a formal department at the time the Quatro and Capano cases arose, and that the advice from the Attorney General's office was "informal."
This position was affirmed by Michael Wiechnik, Chief of the Bureau of Correctional Information Systems, in 1980. Plaintiff then sought a review of this determination from defendant Commissioner Fauver who reiterated the Department's previous position.
It is on the basis of that final administrative determination that plaintiff initiated this action. He has not sought review of this matter in the New Jersey state courts.
This matter is before the court on defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment.

II. Discussion

A. Factual Issues

As this is a motion for summary judgment pursuant to F.R.Civ.P. 56, it shall be granted "if the pleadings, depositions, answers *950 to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Facts asserted by the party opposing the motion, if supported by affidavits, are regarded as true. See Scott v. Plante, 532 F.2d 939 (3d Cir.1976).
At the outset, it must be noted that there is a dispute concerning the number of days plaintiff worked while incarcerated and whether plaintiff received any compensation for his work. Plaintiff avers that he worked 4,425 days, entitling him to 885 days of work credits, and that he did not receive any compensation for that work. Defendants have not directly controverted these allegations. However, they have submitted an affidavit of Michael Wiechnik, in which he states that, although plaintiff's work records for his 1941 incarceration and for portions of his 1944 incarceration are unavailable, plaintiff received 310 days of credit against his 1944 and 1947 sentences. Defendant Wiechnik also avers that the state made payment to the inmate for the work performed. Given that plaintiff's work records are unavailable for his earlier incarcerations, the court can only assume that defendant Wiechnik's averment concerning payment is limited to those years for which records are available. Wiechnik was not employed by the State until 1973, and therefore cannot have personal knowledge of whether plaintiff was compensated in 1941 or 1944. Furthermore, he has not submitted any documents which support his averment.
Obviously, there is a factual dispute concerning the amount of compensation to which plaintiff is entitled for time he worked while serving his 1947 sentence and portions of his 1944 sentences.[5] But there is no dispute concerning plaintiff's lack of compensation for his 1941 work and for some work performed during his 1944 sentences: the unavailability of plaintiff's work records is not sufficient to controvert plaintiff's averment that he has not received compensation for work performed during those periods of time.
Consequently, the court will proceed to determine the issues of law presented as they apply to the uncontroverted portion of plaintiff's factual allegation.

B. Legal Analysis.

1. Immunity

All of the defendants claim to be entitled to immunity from suit. Defendants' Answer at 4, ¶ 17. Furthermore, they claim to have acted in good faith. Defendants' Answer at 4, ¶ 18. In their brief, they only discuss the affirmative defense of "qualified" immunity. Defendants' Brief at 20-22. The court assumes the individual defendants are not relying upon any other kind of immunity defense.[6]
Before reaching the question of the individual's qualified immunity, the court must address the issue of the State of New Jersey's Department of Corrections's immunity from suit.
It is clearly accepted that state agencies are not amenable to suit under § 1983, because they are not "persons" within the meaning of the civil rights statutes. United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 86 (3d Cir.1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); Lewis v. Southeastern Pennsylvania Transp. Authority, 440 F.Supp. 887 (E.D.Pa.1977); Commonwealth of Pennsylvania v. Powers, 311 F.Supp. 1219, 1222 (E.D.Pa.1970). See Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, *951 59 L.Ed.2d 358 (1979) (state is not "person" within the meaning of 42 U.S.C. § 1983). Consequently, this action against the Department of Corrections must be dismissed.
The court can now address the issue of the defendants' good faith defense. Until quite recently, the defense had two aspects, "objective" and "subjective." These aspects, or elements, were negatively defined; and those seeking to undermine the defense needed to establish, respectively, either that an official "knew or should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or [that] ... he took the action with malicious intention to cause a deprivation of constitutional rights or other injury ...." Wood v. Strickland, 420 U.S. 308, 321-322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).
In its most recent pronouncement on the subject, the Supreme Court approved the dropping of the subjective element, because it "has proved incompatible with our admonition in Butz that insubstantial claims should not proceed to trial," Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982), and endorsed the following singular proposition:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Procunier v. Navarette, 434 U.S. 555, 565 [98 S.Ct. 855, 861, 55 L.Ed.2d 24] (1978); Wood v. Strickland, supra, 420 U.S. at 321 [95 S.Ct. at 1000].
Id. at 2738, (emphasis added).
Although the Justices did not have before them the question of a state official's immunity to suit under § 1983, but instead the case of federal officials, they noted:
We have found previously ... that it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials. Butz v. Economore, 438 U.S. [478] at 504 [98 S.Ct. 2894, at 2909, 57 L.Ed.2d 895].
Id. at 2738-2739 n. 30. Accordingly, this court will assume that the principle announced in Harlow is applicable to the case of state government officials now before the court.
On a motion for summary judgment where defendants have raised the good faith defense, the analysis which the court must perform can be divided into three sections:
(1) Was the constitutional right which plaintiff claims clearly established at the time of defendants' challenged conduct?;
(2) Did defendants' challenged conduct violate the constitutional norm?; and finally
(3) Did defendants know or should they have known of the constitutional right?
See Procunier v. Navarette, 434 U.S. at 562, 98 S.Ct. at 859-60. As Justice Brennan suggested in his concurring opinion in Harlow, the issue of defendants' state of knowledge and any discovery which might be necessary on that issue should be deferred until the court has determined whether summary judgment is readily available on either of the other two grounds. Harlow, 102 S.Ct. at 2740, (Brennan, J., concurring).

2. Constitutional Issues

Plaintiff maintains that the defendants' refusal to compensate him for work he performed while imprisoned violated his rights to due process and equal protection as guaranteed by the Fourteenth Amendment. The court must determine "not only the currently applicable law [on these subjects as applied to plaintiff's claims], but whether that law was clearly established at the time [the] ... action[s] occurred." Harlow, 102 S.Ct. 2739. In both Procunier and Harlow, the court declined to specify the circumstances under which "the state of the law" should be evaluated. See Harlow, 102 S.Ct. 2739 n. 32; Procunier, 434 U.S. at 565, 98 S.Ct. at 861.

*952 A. Due Process

Plaintiff maintains that N.J.S.A. 30:4-92 creates a property interest; i.e. supports his claim of entitlement to compensation for work performed while incarcerated and that that interest was denied to him without due process of law.[7]
Certainly as early as 1972, the Supreme Court recognized that "liberty" and "property" interests entitled to protection under the Due Process Clause of the Fourteenth Amendment may be created by state law. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); and Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975-76, 41 L.Ed.2d 935 (1974).
The state law here at issue provides that inmates "shall receive such compensation ... [for their employment] as the State Board shall determine." It further provides that the compensation may take the form of cash or work credits or both.
Generally, a court would look to the authoritative interpretation of a statute by the state courts in determining whether the statute creates an entitlement. Bishop v. Wood, 426 U.S. 341, 345-46, 96 S.Ct. 2074, 2077-78, 48 L.Ed.2d 684 (1976); see also Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). There is no such interpretation available here.[8] Although implicit in the New Jersey court's interpretation of the statute is the unarticulated premise that prison authorities have broad discretion to provide or not provide work opportunities for inmates, see Zink v. Lear, 28 N.J.Super. 515, 520, 101 A.2d 72 (App.Div.1953); Trantino v. Department of Corrections, 168 N.J. Super. 220, 402 A.2d 947 (App.Div.1979); and Rowe v. Fauver, 533 F.Supp. 1239 1243-1244 (D.N.J.1982), they have not reached the issue of whether prison authorities have the discretion to deny inmates compensation for work they have already performed.[9]
Under the circumstances, this court must turn to the language of the statute itself. *953 The court must determine not only that a right to compensation can be grounded in the statute for purposes of due process but also whether that right is clearly established by the statute for purposes of defendants' good faith defenses.
The court concludes that the language of the statute clearly and unambiguously creates an entitlement to some form of compensation. The statute provides that inmates shall be compensatedthe word "shall" is generally used to express what is mandatory. Although the phrase "shall be compensated" is followed by the phrase "as the State Board shall determine," a reasonable, common sense reading of that language does not lead one to conclude that the State Board retains unbridled discretion to deny an inmate all forms of compensation; it leads to the conclusion that the Board has discretion over the kind and amount of compensation which is to be made.
This reading of the statute is supported by the presence of the caveat following the main provision of N.J.S.A. 30:4-92. It contains suggestions for allowable forms of compensation. The fact that it contains the term "may" instead of "shall" does not persuade the court that the Board is free to deny an inmate compensation. When read in conjunction with the main provision of the statute, the court can conclude only that this provision was included to put the Board on notice that the legislature approved of those forms of compensation.
The plain language of the statute, read in a non-technical, common sense fashion, clearly establishes an inmate's right to be compensated for work he has performed. In light of this specific statutory recognition, defendants cannot claim that the right which plaintiff seeks to vindicate was not clearly established. See United States v. Schaefer, 691 F.2d 639 (3d Cir.1982).
Having determined that plaintiff possessed a state-created "property" right in being compensated for his employment, the court must now determine whether his right to substantive due process was violated.[10] In order to prevail on his claim, plaintiff must show that the defendants' actions irrationally or arbitrarily deprived him of his state-created right. Harrah Independent School District v. Martin, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979). More specifically, he must show that the defendants' actions were not rationally related to a legitimate state interest.[11]
Defendants have put forth two state interests which their actions were allegedly intended to serve. First of all, they maintain that work credits are designed to aid prison officials in the maintenance of discipline and require observation and evaluation of a prisoner's work performance. They then conclude that credit for work performed while serving a sentence only furthers this end when it is granted against that particular sentence.
The court fails to see the logic of defendants' reasoning. The state's interest in disciplining inmates is satisfied during that period in which the inmate is employed and under observation and earning his credits. It does not matter when the credits are granted; the discipline occurs at the time the inmate works and subjects himself to further observation and evaluation.
Furthermore, there is no reason to assume that an inmate who has amassed previous earned credits, but who is not entitled to immediate release on the basis of those credits, would not seek to earn more credits in order to achieve an even earlier release, thus subjecting himself to the further discipline of prison authorities.
Finally, if an inmate has previously amassed a surfeit of credits which entitle him to immediate or near-immediate release on his present sentence, what should the institution care about disciplining him?
*954 The court fails to see how defendants' action in denying plaintiff work credits can be other than irrationally related to the state's interest in disciplining inmates.
Defendants articulate another interest which their actions were calculated to serve. They contend that they do not want criminals accumulating "bank accounts" of credits which will give them the security to commit future crimes with impunity. The court agrees that this purpose is legitimate, and that the guidelines which they adopted are rationally related to this end and intelligently tailored to meet this end and this end only. Inmates are denied work credits only where they are incarcerated for a different offense (than the one against which they originally earned the credits) after they have earned the credits.
The court hastens to add, nonetheless, that defendants cannot deny plaintiff all compensation on the basis of the state's interest in preventing the accumulation of credits. An award of cash to individuals in plaintiff's position, for example, would compensate them without serving as an example to encourage others to commit future crimes.
To date, plaintiff has not received compensation in any form for work performed during his 1941 sentence and portions of his 1944 sentences. Although it does not appear in the record that plaintiff actively sought monetary compensation,[12] the statute does not require inmates to request formally that compensation be provided, nor does the State argue for any such requirement.
As the court reads the statute, it places the burden on the State to provide compensation. The mandatory language of N.J. S.A. 30:4-92 when read in light of other provisions of Title 30 compels that conclusion.
N.J.S.A. 30:4-91.4 concerns the manner in which inmates' earnings are to be distributed to them. It provides that if any balance of earnings remains when a prisoner has completed his period of confinement, the balance shall then be paid to the prisoner. And N.J.S.A. 30:4-98 provides that the State Board of Institutional Trustees has the power to determine the rate of compensation to be paid and to pay or cause the same to be paid to the worker or his dependents. Nowhere is it provided that workers must claim their compensation.
The State defendants do not attempt to rationalize their failure to compensate plaintiff. Although defendants Fauver and Wiechnik have not formally denied him cash compensation, their failure to date to compensate him constitutes a constructive denial of his right to compensation which rises to the level of a constitutional deprivation: they were aware of plaintiff's desire for compensation; they were aware of their refusal to grant him work credits against his then present sentence; the burden was on them to compensate him; and the court can conceive of no rationale which could justify their failure to compensate him in some form other than work credits.
Defendants Degnan and Harned, however, cannot be held responsible for violating plaintiff's constitutional right to due process. Their advice letter was written in response to a specific request for advice "as to whether the Department of Corrections should award an inmate credit against a current sentence to be served in the state prison for work credits earned on a separate sentence served in the state prison which has been overturned." Letter dated March 12, 1980, Agency Advice Number M79-4226. The court has found their advice reasonable and non-arbitrary. These defendants were not asked to consider whether inmates with plaintiff's history of incarceration are entitled to any compensation, and they are not responsible for administering the compensation program. Their only involvement in this matter resulted from a specific, narrowly drafted request for advice which they honored by issuing guidelines for the crediting *955 of work credits which meet constitutional standards.
Consequently, the court will dismiss the due process claim against defendants Degnan and Harned. Accordingly, plaintiff's cross-motion is denied as to those two defendants.
Returning to the issue of defendants Fauver's and Wiechnik's good faith defense, the court concludes that defendants are not entitled to the defense. Given the clarity with which plaintiff's right to compensation is established by N.J.S.A. 30:4-92, and the fact that reasonable persons in defendants' positions as correctional institution officials would have known, and here presumably did know, of the statute regulating inmates compensation,[13] the defendants are not entitled to immunity from liability. See Harlow v. Fitzgerald, 457 U.S. 819, 102 S.Ct. at 2739; and United States v. Schaefer, 691 F.2d 639 (3d Cir. 1982).
Therefore, the court will grant plaintiff's cross-motion for summary judgment on the due process claim as it relates to defendants Fauver and Wiechnik and those days plaintiff worked without compensation while serving his 1941 and portions of his 1944 sentences. Accordingly, defendants' motion for summary judgment on that claim will be denied without prejudice as to those days of work.

B. Equal Protection

Plaintiff is also claiming a deprivation of equal protection. He is not challenging the classifications which result from the guidelines propounded by defendants Degnan and Harned and implemented by defendants Fauver and Wiechnik. Nor is he arguing that N.J.S.A. 30:4-92 unfairly discriminates between different classes of correctional inmates. Instead, he is arguing that two other inmates allegedly similarly situated to him were granted work credits against present sentences which were earned while serving subsequently vacated sentences.
The mandate of equal protection applies to administrative behavior as well as to legislation and regulations, and, therefore, the court may properly determine whether defendants' conduct conformed to the requirements of equal protection. See, e.g., Jackson v. Marine Exploration Co., Inc., 583 F.2d 1336, 1347 (5th Cir.1978).
Defendants argue that the former inmates with whom he seeks to be compared, Louis T. Quatro and Michael D. Capano, were awarded work credits under circumstances sufficiently dissimilar to those surrounding plaintiff's request for work credits to preclude an equal protection analysis. They contend that Quatro and Capano were awarded their credits by judges at resentencing hearings and not by correctional institution officials on the advice of the Attorney General's Office, and that plaintiff never sought resentencing.
Furthermore, defendants argue that, even assuming plaintiff and Capano and Quatro were similarly situated in all other respects, the Department of Corrections was not a formal department at the time Quatro's and Capano's cases arose; that whatever advice was received from the Attorney General's office in regard to their case was at most "informal"; and that plaintiff's request was processed under the formally promulgated advice letter of the Attorney General's office which established guidelines now in use. They conclude from this that no equal protection violation occurred. The court agrees and consequently need not address whether Capano, Quatro and plaintiff were similarly situated.
It appears to the court that the Department of Corrections either did not have a formal policy guiding the administration of the statute prior to plaintiff's case and then adopted a formal policy, or had a policy of allowing credits to inmates and chose to abandon that policy and to adopt a new policy with plaintiff's case for the reasons outlined in the court's discussion of the substantive due process claim. There is nothing in the record to indicate that the *956 Department capriciously changed its policy on this matter on numerous occasions or that the policy which it adopted in plaintiff's case was quickly abandoned. It has no reason to believe that defendants intentionally or purposefully discriminated against plaintiff as it would have to find. See Snowden v. Hughes, 321 U.S. 1, 8-9, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1943); Washington v. Davis, 426 U.S. 229, 239-44, 96 S.Ct. 2040, 2047-50, 48 L.Ed.2d 597 (1976).
More important, the mandate of equal protection does not prevent an administrative agency from changing its policies where there are rational reasons for doing so. Plaintiff cites no authority for the contrary proposition, and the court rejects it. Government agencies would be severely handicapped if their policies could be attacked on equal protection grounds, not only for unreasonably discriminating between persons similarly situated but additionally for treating people differently from the way they were previously treated. Consistency of treatment over time is not the hallmark of equal protection.
Defendants' motion for summary judgment on the equal protection claim will be granted; plaintiff's cross-motion will be denied.
Plaintiff's counsel shall submit an appropriate order.
NOTES
[1] Plaintiff also alleges a violation of 42 U.S.C. § 1981 but has not spelled out any theory of recovery under that statute.
[2] The "State Board" means the State Board of Institutional Trustees. N.J.S.A. 30:1-1 (West 1981).
[3] His maximum sentence and thus his term of parole will expire in 1987.
[4] N.J.S.A. 52:17A-4(e) (West 1970) provides that the Attorney General shall interpret statutes for the departments of state government. The advice letter here at issue, Agency Advice Number M79-4226, bears the name of John Degnan and is signed by Ms. Harned.
[5] If plaintiff was compensated in cash, then in accordance with this court's opinion, he would not be entitled to further compensation. However, if plaintiff was not compensated in cash, and it is eventually determined that plaintiff was given credit against his 1944 and 1947 sentences for time he worked while serving those sentences (and that the 885 credits for which he seeks compensation include those credits), then the court will have to decide whether the crediting of work credits against a sentence which is vacated after a prisoner is paroled constitutes "compensation."
[6] None of the plaintiffs has claimed absolute immunity from this suit, and the court will not address that issue.
[7] Plaintiff has not argued that he has an inherent right to be compensated for his labor or a right located in the Constitution itself.

Furthermore, plaintiff has not argued that he was denied a "liberty" interest without due process of law, although the statute at issue provides that "[c]ompensation for inmates of correctional institutions may be in the form of cash or remission of time from sentences or both"; and he claims to have been denied "work credits."
His complaint is drafted in pertinent part as follows:
As a result of the acts of the aforesaid persons, who were at all times acting under color of authority of law, the plaintiff was denied work time credit for the fourteen years and eight months he had served on sentences that were subsequently overturned. This denial has resulted in unjust enrichment to the State of New Jersey at the expense of the plaintiff.
Complaint at VIII (emphasis added).
Given the language of the complaint and the arguments made in plaintiff's brief, the court concludes that plaintiff is alleging only a deprivation of "property" without due process.
[8] Obviously, the court has available to it the state Attorney General's interpretation of the statute as applied to inmates in plaintiff's position seeking work credits. This interpretation does not constitute an authoritative interpretation for the court's purposes. See Clark v. Degnan, 163 N.J.Super. 344, 394 A.2d 914 (Law Div.1978), modified on other grounds and affirmed, 83 N.J. 393, 416 A.2d 816 (1980) (formal statutory interpretation of Attorney General "strongly persuasive" but in no way binding on the courts).

In Harris v. Yeager, 291 F.Supp. 1015, 1017 (D.N.J.1968), aff'd, 410 F.2d 1376 (3d Cir.1969) (per curiam), Judge Cohen held that a prison inmate has no inherent legal right to the payment of monetary compensation for work performed in prison. Moneys paid are "gratuitous payment[s] authorized by the State of New Jersey and made by virtue of an administrative policy...." Id.
This court construes Judge Cohen's opinion as being narrowly focused on the issue of an inherent, or constitutional, right to be compensated for one's labor and not going to the issue of whether the state statute creates a property interest entitled to due process protection.
[9] The state has misperceived the basis of plaintiff's claimit is arguing that plaintiff does not have the right to earn work credits; but that is not the issue presently before the court. It must now be decided whether an inmate who has been given an opportunity to work and who has been employed in a productive occupation is entitled to be compensated under the terms of the statute.
[10] Nowhere in plaintiff's complaint or brief has he claimed a deprivation of procedural due process.
[11] The "rational-relation" test is employed where fundamental rights are not involved. See Harrah Independent School District, 440 U.S. at 199, 99 S.Ct. at 1065.
[12] In a letter dated June 12, 1980 from plaintiff Ingenito to defendant Fauver, plaintiff states that if "Time Credits" are denied, "Then my only recourse will be to seek `Financial Compensation' ...."
[13] The court does not believe that any discovery is necessary on this issue in light of the record in this case.