888 A.2d 483

ROBERT BUNCIE, PLAINTIFF–APPELLANT, v. DEPARTMENT
OF CORRECTIONS, DEFENDANT–RESPONDENT.

FLOYD ELLERBEE, PLAINTIFF–APPELLANT, v. DEPARTMENT
OF CORRECTIONS, DEFENDANT–RESPONDENT.

PEDRO LABOY, PLAINTIFF–APPELLANT, v. DEPARTMENT
OF CORRECTIONS, DEFENDANT–RESPONDENT.

JOSEPH LOGMANS, PLAINTIFF–APPELLANT, v. DEPARTMENT
OF CORRECTIONS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 28, 2005—Decided December 27, 2005.

Before Judges CUFF, LINTNER and PARRILLO.

*Yvonne Smith Segars,* Public Defender, attorney for appellants, (*J. Michael Blake,* Assistant Deputy Public Defender, of counsel and on the briefs).

*Peter C. Harvey,* Attorney General of New Jersey, attorney for respondent, (*Patrick DeAlmeida* Assistant Attorney General, of counsel, and *Lisa A. Puglisi,* Deputy Attorney General, on the briefs).

The opinion of the court was delivered by

PARRILLO, J.A.D.

In these back-to-back appeals, consolidated for opinion purposes, appellants challenge, as violative of equal protection and due process, *N.J.S.A.* 30:4–140, which denies state prisoners commutation credit toward parole eligibility for the period of their presentence jail incarceration, while those released on bail or personal recognizance prior to sentence receive full allowance of commutation credit for the entire period of prison confinement. Specifically, they argue that the denial of commutation credits deprives them of a protected liberty interest, discriminates against them on the basis of financial status, and impermissibly chills their rights to a jury trial and to plead not guilty. We disagree.

In New Jersey, both "jail time" and "commutation time" figure variously in the calculation of release dates that each inmate receives upon arrival at state prison. "Jail time" denotes that time an individual spends in a county jail prior to trial and sentencing, and jail time credits are day-for-day credits given to the inmate for this time in custody and subtracted from the original sentence. On the other hand, commutation credits, or "good time" credits, are granted for "continuous orderly deportment", and are awarded for every year or fractional part of a year of an inmate's sentence. *N.J.S.A.* 30:4–140. Although given to an inmate upon his entry into the state correctional system, *ibid.*; *N.J.A.C.* 10A:9–5.1, commutation credits, unlike jail credits, are awarded in anticipation of good conduct and may be taken from an inmate for a variety of reasons, including misconduct. *N.J.S.A.* 30:4–140; *N.J.S.A.* 30:4–16.2; *N.J.A.C.* 10A:9–5.3(a) and (b).

Thus, *N.J.S.A.* 30:4–140 sets forth a schedule that details the amount of commutation credits applicable to various maximum sentences. However, the statute expressly disallows consideration of county jail time in computing commutation time:

No time credits shall be calculated as provided for herein on time served by any person in custody between his arrest and the imposition of sentence.

[*N.J.S.A.* 30:4–140.]

In practical terms, jail credits given to the inmate for the time spent in custody pre-trial are subtracted from the original sentence, and the commutation credits are calculated using the adjusted sentence. In other words, those individuals who are released either on bail or their own recognizance receive the benefit of the commutation credits for the entire sentence, while those who are not so released receive commutation credits on the sentence minus the time they spent in the county jail pre-trial. As the Department of Corrections (DOC) readily concedes, "the award of commutation credit is actually *reduced* by pre-sentence jail credits."

Thus, appellant, Robert Buncie, being unable to post bail, served 120 days' jail time in the county jail prior to his transfer to state prison to serve an 18–year term with a 9–year parole bar for aggravated sexual assault and endangering the welfare of a child. Accordingly, commutation credits of 1993 were awarded based on a 17–year, 8 month, and 2 day sentence, instead of 2040 credits based on the 18–year sentence imposed. Appellant, Floyd Ellerbee, also failed to make bail and spent 613 days' jail time prior to his transfer to state prison for an aggregate term of 32 years with a 16–year parole bar for conspiracy, and various drug and weapon offenses. His commutation credits totaled 4044 based on a sentence of 30 years, 3 months, and 23 days, instead of 4368 credits based on the 32–year sentence imposed. Appellant, Pedro LaBoy, also unable to post bail, served 872 days' jail time in the county jail prior to his transfer to state prison to serve a 30–year sentence with a 15–year parole bar for aggravated manslaughter. He was awarded 3554 commutation credits based on a sentence of 27 years, 7 months and 10 days, instead of 3984 credits based on the 30–year sentence imposed. Finally, appellant, Joseph Logmans, either failed to make bail or was denied bail and spent 412 days' jail time in the county jail prior to his transfer to state prison to serve an aggregate 30–year term with a 15–year parole bar for kidnapping and various sex offenses. His commutation credits amounted to 3781 based on a sentence of 28 years, 10 months, and 14 days, instead of 3984 credits based the 30–year sentence

imposed. It is undisputed that, were appellants to receive commutation credit for their pre-sentence confinement in county jail, they would be entitled to a reduced maximum term.

By the same token, it merits mention that commutation credits do not affect appellants' parole eligibility. Commutation credits reduce an inmate's maximum incarceration date by reducing the maximum term imposed by the sentencing court. However, an inmate becomes parole eligible when he serves his mandatory minimum term, if one is imposed, or when he serves one-third of his sentence. *N.J.S.A.* 30:4–123.51a; *N.J.A.C.* 10A:71–3.2(c)(2); *Curry v. N.J. State Parole Bd.*, 309 *N.J.Super.* 66, 70, 706 *A.2d* 769 (App.Div.1998). Thus, commutation credits serve only to reduce appellants' maximum terms, but do not affect their parole eligibility dates, which are determined by the mandatory minimum terms imposed by the court.

(i)

■ Appellants contend that because they may be required to serve more time than those receiving the same sentence, *N.J.S.A.* 30:4–140 denies them equal protection by treating them differently than other inmates similarly situated in all respects save their financial ability to post bail prior to conviction and sentencing. We discern no such constitutional infirmity in the legislative classification.

■ "State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause." *Parham v. Hughes*, 441 *U.S.* 347, 351, 99 *S.Ct.* 1742, 1745, 60 *L.Ed.2d* 269, 274 (1979). In this regard, constitutional principles of equal protection do not mandate "that a statute reach every class to which it might be applied", *Torres v. Wagner*, 121 *N.J.Super.* 457, 459, 297 *A.2d* 858 (App.Div.1972), or "that all persons be dealt with identically." *Ibid.; State v. Fernandez*, 209 *N.J.Super.* 37, 48, 506 *A.2d* 1245 (App.Div.1986). "They require only that differences in treatment be justified by an appropriate state interest." *State v. Fernandez, supra,* 209 *N.J.Super.* at 48, 506 *A.2d* 1245 (citing *State v. Krol*, 68 *N.J.* 236, 253, 344 *A.2d* 289 (1975) and *Trantino v.*

*Dep't of Corr.,* 168 *N.J.Super.* 220, 227, 402 *A.*2d 947 (App.Div.), *certif. denied,* 81 *N.J.* 338, 407 *A.*2d 1212 (1979)). Thus absent a suspect classification or a fundamental right, "legislative solutions must be respected if the 'distinctions drawn have some basis in practical experience,' or if some legitimate state interest is advanced." *McGinnis v. Royster,* 410 *U.S.* 263, 276, 93 *S.Ct.* 1055, 1062–63, 35 *L.Ed.*2d 282, 292 (1973) (quoting *South Carolina v. Katzenbach,* 383 *U.S.* 301, 331, 86 *S.Ct.* 803, 820, 15 *L.Ed.*2d 769, 788 (1966)) (citing *Dandridge v. Williams,* 397 *U.S.* 471, 486, 90 *S.Ct.* 1153, 1162, 25 *L.Ed.*2d 491, 502, *reh'g denied,* 398 *U.S.* 914, 90 *S.Ct.* 1684, 26 *L.Ed.*2d 80 (1970)).

▉▉▉▉ Undeniably, "the granting of commutation credits is purely a legislative function." *Lipschitz v. State,* 43 *N.J.Super.* 522, 525, 129 *A.*2d 310 (App.Div.1957); *Zink v. Lear,* 28 *N.J.Super.* 515, 101 *A.*2d 72 (App.Div.1953). Equally clear is "[t]he constitutional power of the Legislature to make reasonable classification of criminals for purposes of sentence and release...." *State v. Wingler,* 25 *N.J.* 161, 175, 135 *A.*2d 468 (1957); *Fernandez, supra,* 209 *N.J.Super.* at 49, 506 *A.*2d 1245; *see also Hluchan v. Fauver,* 480 *F.Supp.* 103, 109 (D.N.J.1979). Indeed, "[t]he determination of an optional time for parole eligibility elicit[s] multiple legislative classifications and groupings, which ... require only some rational basis to sustain them." *McGinnis, supra,* 410 *U.S.* at 270, 93 *S.Ct.* at 1059, 35 *L.Ed.*2d at 288 (citing *James v. Strange,* 407 *U.S.* 128, 140, 92 *S.Ct.* 2027, 2034, 32 *L.Ed.*2d 600, 610 (1972); *Lindsey v. Normet,* 405 *U.S.* 56, 73–74, 92 *S.Ct.* 862, 874–75, 31 *L.Ed.*2d 36, 50–51 (1972); *Schilb v. Kuebel,* 404 *U.S.* 357, 368–69, 92 *S.Ct.* 479, 486, 30 *L.Ed.*2d 502, 513 (1971), *reh'g denied,* 405 *U.S.* 948, 92 *S.Ct.* 930, 30 *L.Ed.*2d 818 (1972); *Dandridge, supra,* 397 *U.S.* at 486–87, 90 *S.Ct.* at 1162, 25 *L.Ed.*2d at 503 (1970)). Thus, the inquiry is "whether the challenged distinction rationally furthers some legitimate, articulated state purpose." *McGinnis, supra,* 410 *U.S.* at 270, 93 *S.Ct.* at 1059, 35 *L.Ed.*2d at 289.

New Jersey recognizes this to be the appropriate standard. *See Fernandez, supra,* 209 *N.J.Super.* at 51, 506 *A.*2d 1245 (finding a

rational basis for distinguishing sex offenders to indeterminate term under the former Sex Offender Act, *N.J.S.A.* 2A:164–3 to – 10, from those committed to determinate sentences under the new criminal code for purposes of awarding commutation credits); *Torres, supra,* 121 *N.J.Super.* at 459–60, 297 *A.*2d 858 (finding a rational basis for treating inmates who served time in county jail differently from inmates in state prison). By the same token, some legislative penological classifications have been struck down for want of a rational basis. *See Van Winkle v. N.J. Dep't of Corr.,* 370 *N.J.Super.* 40, 47, 850 *A.*2d 548 (App.Div.2004) (finding "there is no conceivable, much less rational, basis to distinguish, for purposes of work time credits, between prisoners serving a sentence in State and those serving concurrent time out-of-state such as petitioner."); *State ex rel. J.M.,* 273 *N.J.Super.,* 593, 606, 642 *A.*2d 1062 (Ch.Div.1994) (finding "no legitimate state interest served by the legislature's decision [in *N.J.S.A.* 2A:4A–43f(1) ] . . . eliminat[ing] credit for [jail] time" juveniles serve pending adjudication) (emphasis in original removed).

Courts in New Jersey have previously rejected challenges to the same legislative classification at issue here, but embodied in a predecessor statute. We first addressed the differential treatment in the award of commutation credits in *Lipschitz.* The statute passed upon in *Lipschitz* was a previous version of the current statute calling for commutation credits to be applied every month, not at the outset of the sentence as the current statute does. 43 *N.J.Super.* at 525, 129 *A.*2d 310; *N.J.S.A.* 30:4–140. As with the current version however, the predecessor law did not award commutation credits for presentence county jail time. We found justification for this distinction in the fact that "[t]he granting or withholding of commutation credits requires the exercise of judgment by [state prison] officials[,] . . . [who] can only exercise such judgment when the prisoner is in their custody. . . ." *Id.* at 527, 129 *A.*2d 310. We determined that "plaintiff's proposal that the prison officials reach back into the past and make certain determinations upon the basis of a county jail set of circumstances where they had not the slightest semblance of jurisdiction over

plaintiff, is without warrant in law." *Ibid.* In other words, because the DOC could not assess an inmate's prior conduct, it could not determine whether or not to award commutation credits.

We relied on a similar rationale years later in *Torres* in rejecting an equal protection claim that *N.J.S.A.* 30:4–140 "impermissibly discriminate[d] between a wealthy man and a poor man." *Torres, supra,* 121 *N.J.Super.* at 459, 297 *A.*2d 858. "The penological objective of *N.J.S.A.* 30:4–140 is to provide an early release to persons sentenced to State Prison, an objective that has no relation to persons confined in county jail awaiting trial." *Id.* at 460, 297 *A.*2d 858. As in *Lipschitz,* we noted that "[t]he granting or forfeiture of commutation credits ... requires the exercise of judgment by the State Prison authorities based upon their observation and evaluation of the prisoner's conduct, and they can exercise such judgment only when the prisoner is in their custody at the State Prison." *Ibid.* We deemed this difference in custodial supervision and penological objective a rational, reasonable basis for the legislative recognition of the separate classes. *Ibid.* In finding no equal protection violation, we concluded that the disparate treatment afforded inmates who served presentence county jail time has "a rational relation to the objective sought to be attained by the statute." *Ibid.*

Our decision in *Torres* presaged the United State Supreme Court's decision in *McGinnis* one year later. In *McGinnis,* the Court examined a provision of New York's corrections law that, as in this case, did not award commutation credits for presentence jail time in the calculation of a state inmate's minimum parole. *McGinnis, supra,* 410 *U.S.* at 266, 93 *S.Ct.* at 1058, 35 *L.Ed.*2d at 287. In finding a reasonable basis for such disparate treatment, the Court looked to the differences between the state and county jail system.

> [A]t state prisons a serious rehabilitative program exists. County jails, on the other hand, serve primarily as detention centers .... [t]hey are "neither equipped nor intended to do anything more than detain people awaiting trial and maintain no schools, run no factories and require no work from these inmates." While ...

[there are] some rehabilitative or recreational facilities within some county jails, it is clear that nothing comparable to the State's rehabilitative effort exists.

[*Id.* at 271, 93 *S.Ct.* at 1060, 35 *L.Ed.*2d at 289 (footnotes omitted).]

The Court found this difference in penological purpose sufficient to sustain the disparity in treatment of commutation credits, holding that "the challenged classification ... rationally promotes the legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole ...." *Id.* at 277, 93 *S.Ct.* at 1063, 35 *L.Ed.*2d at 292–93.

Just as significant, for present purposes, the Court also found that the New York statute promoted good conduct and was designed not only to promote rehabilitation, but also to maintain order and discipline. *Id.* at 275, 93 *S.Ct.* at 1062, 35 *L.Ed.*2d at 291. In other words, the maintenance of order and discipline are furthered because commutation credits may be forfeited on account of infractions of prison disciplinary rules, providing an incentive for lawful behavior and good conduct during incarceration. Although it was uncertain which of the two was the primary goal, the Court found that discipline was also a "clear and legitimate purpose," which itself would have justified the statute. *Id.* at 277, 93 *S.Ct.* at 1063, 35 *L.Ed.*2d at 292.

 The rulings in *McGinnis* and *Torres* dictate the result we reach here. To be sure, the statute we addressed in *Torres* and *Lipschitz* was a predecessor version in which commutation credits were awarded to an inmate periodically during his incarceration, whereas now they are granted upon admission to the state correctional system. Nevertheless, as in the past, good time credits remain subject to divestment in the event of prisoner misconduct. The DOC retains the authority to forfeit commutation credits where the inmate has committed disciplinary infractions. *See N.J. Op. Atty. Gen. 111, Formal Opinion No. 26 (1979); Bender v. N.J. Dep't of Corr.*, 356 *N.J.Super.* 432, 437–38, 812 *A.*2d 1154 (App.Div.2003).

We perceive no difference, constitution-wise, in the application of these two statutory versions. Inmate behavior is still evaluated and, unlike jail credit, the inmate risks loss of otherwise fixed good time credits for misbehavior. To this extent, the upfront award may be considered neither permanent nor mandatory. On the contrary, subjecting such an award to forfeiture may be considered, as was the New York statute in *McGinnis,* a means of "rehabilitation by way of incentive." *Commc'ns Workers of Am. v. N.J. Dep't of Pers.,* 154 *N.J.* 121, 133, 711 *A.*2d 890 (1998) (Handler, J., dissenting). At the very least, it is a means of maintaining order and discipline in the state correctional system. In our view, either purpose serves as a reasonable basis to sustain the legislative classification in *N.J.S.A.* 30:4–140.

We imagine the argument could be made that because "good time" credit is to induce good behavior by prisoners while they are confined, the place of their confinement becomes irrelevant. Not so. The State represents that the DOC lacks the means to determine that a state prison inmate behaved appropriately while in county jail, and nothing in this record suggests otherwise. Consequently, if required to award commutation credits on presentence time served in county jail, the DOC would be doing so without verification of the inmate's entitlement. Correspondingly, if the inmate received discipline in county jail, the DOC would be without the means to remove commutation credits for such infractions because it could not, consistent with due process, ensure that discipline was properly imposed at the county level. *See Avant v. Clifford,* 67 *N.J.* 496, 521, 341 *A.*2d 629 (1975).

We also find appellants' reliance on out-of-state authority unpersuasive. In the first place, they are not binding on us, and for the most part they deal with state correctional systems and regulations not entirely identical to New Jersey's. *See, e.g., Hampton v. Rowe,* 88 *Ill.App.*3d 352, 43 *Ill.Dec.* 511, 410 *N.E.*2d 511, 512 (1980) (Department of Corrections adopted policy where statutory and compensatory good time credits were awarded to all inmates); *People v. Sage,* 26 *Cal.*3d 498, 165 *Cal.Rptr.* 280, 611 *P.*2d 874, 876 (1980) (involving statutes allowing reduction of prison term with

good time credits accumulated presentence); *State ex rel. James v. Stamps*, 562 *S.W.*2d 354, 355 (Mo.1978) (discussing a three-fourths statute that reduced time for all inmates in any institution when the time spent incarcerated was orderly and peaceful). Other out-of-state cases cited by appellants are completely inapposite because they concern jail credits, not commutation credits, for presentence incarceration. *Johnson v. Prast*, 548 *F.*2d 699, 700 (7th Cir.1977); *Ham v. North Carolina*, 471 *F.*2d 406, 407 (4th Cir.1973); *United States v. Gaines*, 449 *F.*2d 143, 144 (2d Cir. 1971).

In sum, the legislative classification in *N.J.S.A.* 30:4–140 is reasonably related to a proper governmental objective and serves legitimate state interests. Consequently, the penological scheme does not offend equal protection principles.

(ii)

██ Appellants also argue that the prohibition of commutation credits for presentence incarceration violates their due process rights because it encourages guilty pleas to lessen the overall length of incarceration, thus penalizing their Sixth Amendment right to a jury trial and Fifth Amendment right to plead not guilty. We discern no such deterrent effect exerted by the legislative classification on the exercise of constitutional rights.

It is well established that the State may not exert an unnecessary price for the assertion of a constitutional right. *See, e.g., United States v. Jackson*, 390 *U.S.* 570, 88 *S.Ct.* 1209, 20 *L.Ed.*2d 138 (1968); *cf. Garrity v. New Jersey*, 385 *U.S.* 493, 87 *S.Ct.* 616, 17 *L.Ed.*2d 562 (1967); *Griffin v. California*, 380 *U.S.* 609, 85 *S.Ct.* 1229, 14 *L.Ed.*2d 106, *reh'g denied*, 381 *U.S.* 957, 85 *S.Ct.* 1797, 14 *L.Ed.*2d 730 (1965). It is equally clear that constitutional principles do not serve to insulate those accused of criminal conduct from the necessity of making delicate choices. *See, e.g., Chaffin v. Stynchcombe*, 412 *U.S.* 17, 93 *S.Ct.* 1977, 36 *L.Ed.*2d 714 (1973); *McGautha v. California*, 402 *U.S.* 183, 91 *S.Ct.* 1454, 28 *L.Ed.*2d 711 (1971), *reh'g denied*, 406 *U.S.* 978, 92 *S.Ct.* 2407, 32 *L.Ed.*2d 677 (1972); *Brady v. United States*, 397 *U.S.* 742, 90 *S.Ct.* 1463, 25 *L.Ed.*2d 747 (1970); *McMann v. Richardson*, 397 *U.S.* 759, 90

*S.Ct.* 1441, 25 *L.Ed.*2d 763 (1970); *State v. Corbitt,* 74 *N.J.* 379, 398, 378 *A.*2d 235 (1977), *aff'd,* 439 *U.S.* 212, 99 *S.Ct.* 492, 58 *L.Ed.*2d 466 (1978). The criminal process, like the rest of the legal system, "is replete with situations requiring 'the making of difficult judgments' as to which course to follow." *McGautha, supra,* 402 *U.S.* at 213, 91 *S.Ct.* at 1470, 28 *L.Ed.*2d at 729 (quoting *McMann, supra,* 397 *U.S.* at 769, 90 *S.Ct.* at 1448, 25 *L.Ed.*2d at 772).

A "defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction." *Williams v. Florida,* 399 *U.S.* 78, 83, 90 *S.Ct.* 1893, 1897, 26 *L.Ed.*2d 446, 451 (1970). So too, "when [an accused] presents . . . witnesses [at trial,] he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the [prosecution with strong] rebuttal evidence." *Id.* at 83–84, 90 *S.Ct.* at 1897, 26 *L.Ed.*2d at 451. "That [a] defendant faces such a dilemma 'has never been thought an invasion' of his constitutional rights." *Corbitt, supra,* 74 *N.J.* at 398, 378 *A.*2d 235 (quoting *Williams, supra,* 399 *U.S.* at 84, 90 *S.Ct.* at 1897, 26 *L.Ed.*2d at 451). Rather, the sole inquiry is whether the State "unnecessarily" places a burden upon the accused's assertion of his constitutional right to defend against a criminal charge. *Id.* at 397, 378 *A.*2d 235.

That inquiry need not even be reached in this case because defendant is not being treated any differently for standing trial. Moreover, both inmates in jail and inmates free on bail choose to enter plea agreements, and the decision to enter into a guilty plea is usually bottomed on a host of factors none of which are related to the award of commutation credits. And, most significantly, it is not an inmate's choice to stand trial that causes the DOC to calculate his commutation credits after the application of his jail time credits, but rather the fact that his presentence incarceration was outside the custody of the agency. There is no logical connection, therefore, between the exercise of one's right to stand trial and the ultimate award of commutation credits. In other words, the receipt of commutation credits is not conditioned on a

defendant's waiver of his constitutional trial right, but rather on his conviction, subsequent admission to state prison, and avoidance of misconduct thereafter.

In sum, we find no credible proof that the prospect of receiving more commutation credits operates as an appreciable incentive to forego trial and plead guilty. As previously noted, commutation credits do not reduce judicial or statutorily imposed mandatory minimum terms and are only awarded after the expiration of the minimum term. *N.J.S.A.* 30:4–123.51a; *Curry v. N.J. State Parole Bd., supra,* 309 *N.J.Super.* at 70, 706 *A.*2d 769. Here, each appellant received a mandatory minimum term, and thus commutation credits serve only to reduce his maximum term, but do not affect his parole eligibility date, which is determined by the mandatory minimum term imposed by the court. Under the circumstances, we discern no inhibiting effect on the exercise of constitutional rights. Where the so-called "burden of choice" is as unproven, remote and speculative as here, incursions upon valid state interests are simply not justified. In our view, the legislative classification passes constitutional muster.

Affirmed.